| Case No. | CV 08-5099 PSG (PJWx) | Date | Dec. 30, 2008 |
|---|---|---|---|
| Title | Superbalife, Int'l LLC v. PowerPay LLC | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order Granting Defendant's Motion

Pending before the Court is Defendant's motion to dismiss Superbalife's Complaint without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(3), or, alternatively, for an order transferring the action to the United States District Court for the Eastern District of New York. The Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15. After reviewing the moving and opposing papers, the Court hereby GRANTS Defendant's Motion.

I.  BACKGROUND

Plaintiff Superbalife International LLC ("Superbalife") manufactures and sells herbal supplements. According to Superbalife, because a "significant portion" of its sales are made directly to its customers, it needs "a reliable and honest credit card service provider in order to process its direct-to-the-customer sales." *Compl.* ¶ 6. To this end, Superbalife submitted an application to retain Defendant PowerPay LLC ("PowerPay") to help process charges submitted by Superbalife and to help Superbalife transfer the money received from credit card companies to a bank account maintained by Superbalife. *Id.* at ¶ 7.

Superbalife alleges that a number of problems arose shortly after PowerPay began processing the charges submitted by Superbalife. For instance, Superbalife claims that PowerPay began representing that a number of Superbalife's customers reversed the charges and declined to make the payments that were reflected in their credit card statements. According to Superbalife, these "chargebacks" were most likely the result of a confusing identifier on its customers' credit card statements. Rather than identify Superbalife by its name or product, the

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5099 PSG (PJWx) | Date | Dec. 30, 2008 |
|---|---|---|---|
| Title | Superbalife, Int'l LLC v. PowerPay LLC | | |

identifier was listed as "Superlife8003013257." Although Superbalife requested that PowerPay adopt and incorporate a more apt and less-confusing identifier, PowerPay allegedly failed to do so.

At least three other problems allegedly arose during the course of this relationship. First, Superbalife claims that PowerPay notified it that as a result of the large number of chargebacks, MasterCard, who is one of the credit card companies that accepted charges made by Superbalife through PowerPay, had imposed a large number of contractual fines and penalties. Although Superbalife repeatedly demanded documentation of MasterCard's actions, PowerPay refused to comply with this request. Second, according to Superbalife, it had a policy of cancelling a transaction if a customer experiencing "buyer's remorse" timely notified Superbalife of her decision to cancel her order. Superbalife further alleges that although it notified PowerPay on several occasions not to charge a customer whose order had been cancelled, PowerPay nonetheless allowed the charges to be made against the customer, which resulted in a damaged relationship between Superbalife and the customer. Lastly, Superbalife alleges that it has reconciled the deposits made by PowerPay into Superbalife's bank accont and believes that PowerPay has failed to pay more than $187,000 due Superbalife. Supposedly, Superbalife confronted PowerPay about this financial discrepancy but instead of paying Superbalife the money Superbalife believes it is due, PowerPay allegedly told Superbalife that it needed to withhold the money to cover anticipated future chargebacks, fines and/or penalties.

On August 4, 2008, Superbalife filed a lawsuit against PowerPay. In its lawsuit, Superbalife asserts the following five claims: (1) breach of contract; (2) fraud and deceit; (3) conversion; (4) violation of the Racketeer Influenced and Corrupt Organizations Act; and (5) violation of California's Unfair Competition Law. Then, on November 21, 2008, PowerPay filed a motion to dismiss Superbalife's Complaint without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(3), or, alternatively, for an order transferring the action to the United States District Court for the Eastern District of New York.[1] It is PowerPay's contention that dismissal or transfer is appropriate because both parties contractually agreed to a mandatory forum selection clause providing for exclusive venue in Nassau County, New York.

II.     LEGAL STANDARD

---

[1] In actuality, this is the second time PowerPay has filed this motion. The Court dismissed the previous motion on the ground that PowerPay failed to comply with the Local Rules' meet and confer requirement. *See Order on Defendant's Motion to Dismiss* (Oct. 7, 2008).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5099 PSG (PJWx) | Date | Dec. 30, 2008 |
|---|---|---|---|
| Title | Superbalife, Int'l LLC v. PowerPay LLC | | |

"A motion to dismiss based on enforcement of a forum selection clause is treated as a motion for improper venue under Rule 12(b)(3)." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). In such a motion, the Court must draw all reasonable inferences and resolve all factual disputes in favor of the non-moving party or, in the alternative, may hold an evidentiary hearing. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137-39 (9th Cir. 2004). However, the pleadings need not be accepted as true. *Id.* at 1137.

III.  DISCUSSION

PowerPay advances two arguments as to why this Motion should be granted in its favor. First, PowerPay argues that it is a party to an agreement that contains a forum selection clause. Second, PowerPay contends that regardless of whether it is entitled to enforce the forum selection clause as a party to the relevant agreement, it may do so under New York law.

 A. Whether PowerPay is a Party to the Agreement That Contains the Forum Selection Clause

The Court first considers whether PowerPay is a party to the "Merchant Processing Agreement," which contains the forum selection clause in dispute.[2] According to PowerPay, it can enforce that clause because it contracted with Superbalife through the "Merchant Application," which incorporated the Merchant Processing Agreement and, by extension, the forum selection clause. However, it is Superbalife's position that the Merchant Application is not an agreement between Superbalife and PowerPay, but "just . . . an application by Superbalife for services of a group of credit card companies that required acceptance by signature of those companies." *Opp.* 5:2-3.

---

[2] Paragraph 16 of the Merchant Processing Agreement reads as follows:

> Merchant [here, Superbalife] and Guarantor [here, Fred and Corinne Buckley, the owners of Superbalife] hereby irrevocably and unconditionally submit to the jurisdiction of any court of competent jurisdiction located in the County of Nassau, State of New York in any action arising out of or relating to this Agreement, and Merchant and Guarantor hereby irrevocably and unconditionally agree that all claims with respect to such action or proceeding may only be heard in a court located in the County of Nassau, State of New York.

*Flaherty Aff., Ex. C* at p. 17.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5099 PSG (PJWx) | Date | Dec. 30, 2008 |
|---|---|---|---|
| Title | Superbalife, Int'l LLC v. PowerPay LLC | | |

In support of its position, Superbalife directs the Court's attention to a section of the Merchant Application entitled "Acknowledgement of Agreement and Resolution." That section provides, "All information contained in this application was completed or supplied by all contracting parties, EVO, GLOBAL PAYMENTS DIRECT, INC., and HSBC BANK USA, National Association and their agents and/or assigns thereof . . . ." *Flaherty Aff., Ex. C* at p. 14. Directly below this statement are six signature blocks, in which the "owners/officers," EVO, HSBC Bank USA, National Association, Global Payments Direct, Inc., and Concord EFS National Bank can respectively sign. *Id.* Superbalife contends that the absence from the Merchant Application of both a signature block for PowerPay and PowerPay's signature is evidence that it was not a party to the Merchant Application and therefore the Merchant Application is not a contract between Superbalife and PowerPay.

While Superbalife is correct that there is no signature block for PowerPay and that PowerPay did not sign the Merchant Application, this does not necessarily mean that PowerPay is not a party to the Merchant Application. It is a well-established rule of contract law that one can be bound to a contract even if she does not sign anything. Instructive here is *Texaco, Inc. v. Goldstein*, 34 Misc. 2d 751, 229 N.Y.S.2d 51 (1962). In *Texaco*, the Municipal Court of the City of New York explained how a binding contract arose between a credit card customer and the credit card company. *Id.* According to the court, "the application to the plaintiff, by the defendant, for the issuance to him of a credit card, and the acceptance by him and use thereafter of the card, constitutes the offer and acceptance resulting in an entire contract." *Id.* at 756. Noticeably absent from the contract in *Texaco* was the signature of the plaintiff. Nevertheless, the absence of the plaintiff's signature did not preclude the court from finding that a binding contract existed. This Court recognizes that the posture of the instant case is different than that in *Texaco*. But this difference is not a decisive one. The basic rule that guides the Court's decision here is the same rule that guided the *Texaco* court's decision—"The conduct of a party may manifest assent if the party intends to engage in such conduct and knows that such conduct gives rise to an inference of assent." *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 93, 699 N.Y.S.2d 716 (1999).

Now it seems beyond dispute that by providing credit card processing services to Superbalife, *Compl.* ¶¶ 7-8, PowerPay manifested its assent to some agreement between itself and Superbalife. The critical question here, though, is exactly to what did PowerPay manifest its assent? For the reasons described below, the Court believes that the circumstances compel a finding that PowerPay manifested its assent to the Merchant Application.

As a starting point, the Court notes that PowerPay's logo is conspicuously displayed at

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5099 PSG (PJWx) | Date | Dec. 30, 2008 |
|---|---|---|---|
| Title | Superbalife, Int'l LLC v. PowerPay LLC | | |

the top of the first page of the Merchant Application. *Flaherty Aff.*, *Ex. C* at p. 12. The Court also notes that the Application came to Corinne and Fred Buckley's attention by way of an email sent by PowerPay. *Flaherty Aff.*, *Ex. B* at p. 11. Additionally, contrary to Superbalife's arguments otherwise, the Application contains terms and obligations that each party owes to one another. For example, on one page of the Merchant Application, Corinne and Fred Buckley handwrote the agreed-upon rate structure. *Flaherty Aff.*, *Ex. A*. at pp. 6 & 9.

The Court fails to see how Superbalife could not have been aware that it was entering into an agreement with PowerPay. Superbalife submitted an application that it received from PowerPay, to PowerPay. That application not only bore PowerPay's name and insignia, but it also listed terms and obligations of both parties. And, lastly, in accordance with PowerPay's "representa[tion] that for a fee, it would process the charges submitted by Plaintiff," *Compl.* ¶ 7, PowerPay began providing the credit processing services called for under the Merchant Application. *Id.* at ¶ 8. Accordingly, an agreement was formed between PowerPay and Superbalife.

Having determined that the Merchant Application is a binding contract between PowerPay and Superbalife, the next issue the Court must address is whether the forum selection clause was in fact incorporated into the Merchant Application. For the reasons that follow, the Court finds that it was so incorporated.

The Merchant Application repeatedly states that it also consists of the Merchant Processing Agreement, which, as noted above, contains the forum selection clause in dispute. For example, page 3 of the Merchant Application provides:

> By signing below on either the original or a facsimile, you are agreeing to the provisions stated within the Terms and Conditions of the Merchant Processing Agreement attached as either pages 4, 5, and 6 of this Application & Merchant Agreement, or, as printed on the reverse pages of this Application, and you are acknowledging that you have carefully read each of the provisions before signing.

*Flaherty Aff., Ex. C* at p.17. *See also Flaherty Aff., Ex. C* at p. 12 ("Merchant must review and understand the terms of the Merchant Agreement."); *id.* ("The responsibilities listed above do not supersede the terms of the Merchant Agreement and are provided to ensure the merchant understands these specific responsibilities."); *Ex. C* at p. 14 ("IMPORTANT: This Merchant Application and Merchant Processing Agreement are comprised of six (6) total pages."). Thus,

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5099 PSG (PJWx) | Date | Dec. 30, 2008 |
|---|---|---|---|
| Title | Superbalife, Int'l LLC v. PowerPay LLC | | |

from the plain language of the Merchant Application it is clear that the relevant agreement at hand consists of both the Merchant Application and the Merchant Processing Agreement.

What is also clear from the plain language of the Merchant Processing Agreement is that the forum selection clause is a mandatory forum selection clause.[3] The forum selection clause states that the signatories "irrevocably and unconditionally submit to the jurisdiction of any court of competent jurisdiction located in the County of Nassau, State of New York in any action arising out of or relating to this Agreement." *Flaherty Aff., Ex. C*. p.17. This language is determinative. By agreeing to this clause, Superbalife also agreed to pursue any and all litigation exclusively in the County of Nassau. *See Northern Cal. Dist. Council of Laborers*, 69 F.3d at 1037.

One last issue remains: Can PowerPay enforce this clause? After all, a party can successfully challenge enforcement of a mandatory forum selection clause if she can show that enforcing the clause would be "unreasonable under the circumstances." *Bremen*, 407 U.S. at 10. Significantly, though, the Supreme Court has construed this exception narrowly:

> A forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court;" or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

*Argueta*, 87 F.3d at 325 (citations omitted). In the instant action, Superbalife bears the "heavy burden" of establishing unreasonableness of the forum selection clause in dispute. *Id.*

Superbalife has failed to carry its burden. It has not produced any evidence indicating that it can seek refuge under one of three narrow exceptions delineated above. Instead, it has

---

[3] There are two types of forum selection clauses. *Northern Cal. Dist. Council of Laborers v. Pittsburgh-Des Moines Steel Co.*, 69 F.3d 1034, 1036-37 (9th Cir. 1995). "A mandatory forum selection clause is presumed valid and is to be strictly enforced. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 32 L. Ed. 2d 513, 92 S. Ct. 1907 (1972). A permissive forum selection clause, on the other hand, simply means that the parties consent to the jurisdiction of the designated forum. *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 78 (9th Cir. 1987). "To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one." *Northern Cal. Dist. Council of Laborers*, 69 F.3d at 1037.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

O

JS-6

| Case No. | CV 08-5099 PSG (PJWx) | Date | Dec. 30, 2008 |
|---|---|---|---|
| Title | Superbalife, Int'l LLC v. PowerPay LLC | | |

focused its energy and efforts in arguing that PowerPay was not a party to the relevant agreement and cannot enforce the agreement under New York law. It was incumbent upon Superbalife to demonstrate why "enforcement would be unreasonable and unjust." *Sun World Lines, Ltd. v. March Shipping Corp.*, 801 F.2d 1066, 1067 (8th Cir. 1986). Its failure to do so is fatal to its position. Accordingly, the Court finds that PowerPay may enforce the forum selection clause.

      B.      <u>PowerPay's Remaining Arguments</u>

Because the Court has determined that PowerPay, as a party to the Merchant Application, can enforce the forum selection clause, the Court need not determine whether PowerPay can enforce the clause under two doctrines of New York law.

IV.      <u>CONCLUSION</u>

It is hereby ORDERED that the instant action be TRANSFERRED to the United States District Court for the Eastern District of New York.

**IT IS SO ORDERED.**